UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 7:20-CV-00158-REW-EBA

BRETT ISON,                                                                                           PLAINTIFF,

V                              **RECOMMENDED DISPOSITION**

BERKSHIRE LIFE INSURANCE COMPANY,                                         DEFENDANT,

*** *** *** ***

Brett Ison brought the instant lawsuit in Letcher Circuit Court, alleging breach of contract in Berkshire's refusal to pay full disability benefits to Ison under the terms of a disability insurance policy. [R. 1-1]. On December 22, 2020, Berkshire timely removed this action pursuant to 28 U.S.C. § 1441, alleging that the Court has original jurisdiction over the matter under 28 U.S.C. § 1332(a)(1). [R. 1]. Ison filed his motion to remand, alleging the Court lacks subject matter jurisdiction because the amount in controversy does not exceed $75,000. [R. 7]. With the issues being fully briefed, this Court now recommends that Plaintiff's motion to remand be GRANTED.

I. ANALYSIS

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). A district court properly exercises jurisdiction over a removed action where it would have had original jurisdiction over the matter. 28 U.S.C. § 1441(a). When a case is removed to federal court on the basis of diversity jurisdiction, the federal court will not have subject matter jurisdiction over the case unless there is both complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332; *see also Medlen v. Estate of Meyers*, 273 Fed. App'x 464, 469 (6th Cir. 2008). A defendant removing

a case bears the burden of proving the diversity jurisdiction requirements. *Mays v. City of Flint*, 871 F.3d 437, 442 (6th Cir. 2017). The question of whether the court has jurisdiction "is determined at the time of removal," *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 375 (6th Cir. 2007), with all doubts resolved in favor of remand. *Eastman v. Marine Mech. Corp.,* 438 F.3d 544, 550 (6th Cir. 2006).

First, complete diversity exists between the plaintiff and the defendant, *see* 28 U.S.C. § 1332(c)(1), as the parties agree that Berkshire is organized under the laws of and maintains its principle place of business in Massachusetts, and the plaintiff is a citizen of Kentucky. [R. 1 at p. 2; R. 7-1 at p. 4]. Thus, the parties are diverse as Plaintiff and Defendant are citizens of different states.

Second, in accordance with Kentucky law, Plaintiff does not state a specific amount of damages sought in his complaint. *See* Ky. R. Civ. P. 8.01(2). So, the Defendant must establish by a preponderance of the evidence that the amount in controversy exceeds $75,000. *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 572 (6th Cir. 2001). When the complaint does not allege a specific amount of damages, defendant may accomplish this by showing that a "fair reading of the unspecified and unliquidated damages sought by plaintiffs provided that more than $ 75,000 was in controversy." *Hayes* at 573. *See also Halsey v. AGCO Corp.*, 755 F. App'x 524, 529 (6th Cir. 2018) (collecting cases). In other words, Defendant must show that it is "more likely than not" that the amount in controversy exceeds $75,000. *Endrawes v. Safeco Ins. Co.*, 737 F. App'x 731, 734 (6th Cir. 2018).  However, for the reasons that follow, the amount in controversy in this action is less than $75,000, and the matter must be remanded.

a. **Compensatory Damages**

This case hinges on determining when and how to determine the amount in controversy. Plaintiff argues that the compensatory damages should be calculated by looking at the amount of unpaid benefits at the time the lawsuit was filed in state court. Plaintiff contends, and Defendant does not refute, that the amount of benefits in default at the time the complaint was filed was $66,616.67. [R. 7-1; *see generally* R. 10]. Defendant, however, argues that the compensatory damages should be calculated at the time the matter was removed to this court. [R. 10 at p. 5-6]. According to the Defendant, at the time of removal, the benefits in default had accumulated to $73,150, which added to other damages available under the contract, would result in a total amount of damages of $77,894, thus satisfying the minimum jurisdictional amount. [R. 10 at p. 2].

In this case, the record is clear that the plaintiff does not challenge the validity of the insurance contract existing between the parties, but only challenges the denial of past benefits under the terms of the policy. In such a circumstance, the Sixth Circuit, in *Mass. Cas. Ins. Co. v. Harmon*, 88 F.3d 415 (6th Cir. 1996), states that:

> The clear federal rule is that "where the validity of an insurance policy containing disability benefit provisions is involved in a diversity action in a federal district court, future potential benefits may be considered in computing the requisite jurisdictional amount." Joseph E. Edwards, Annotation, *Determination of Requisite Amount in Controversy in Diversity Action in Federal District Court Involving Liability Under, or Validity of, Disability Insurance*, 11 A.L.R. Fed. 120, 128 (1972) (collecting cases). The only federal court to have addressed the issue in the Sixth Circuit has come to a similar conclusion. *See Button v. Mutual Life Ins. Co. of New York*, 48 F. Supp. 168, 171 (W.D. Ky. 1943) (in action by insurance company in which the validity of the entire contract is in question, the face amount of the policy is in controversy). In contrast, "future potential benefits may not be taken into consideration in the computation of the amount in controversy in diversity actions in Federal District Courts involving disability insurance where the controversy concerns merely the extent of the insurer's obligation with respect to disability benefits and not the validity of the policy." 11 A.L.R. Fed. at 132 (collecting cases).

*Harmon* at 416-17.

*Harmon* provides helpful context for determining when future benefits are available for recovery under a policy, however, it does not answer the question of whether "future benefits" are those benefits which accumulate after a lawsuit is filed or whether they are benefits which could potentially accumulate after the lawsuit concludes. In other words, *Harmon* does not address the instant question of whether, for the purpose of calculating the amount in controversy, courts should consider the amount of unpaid benefits at the time the complaint was filed or at the time the case was removed. District courts post-*Harmon* have reached mixed results, with some courts calculating the amount in controversy as the past due benefits at the time of filing, *see e.g. Magnuson v. Paul Revere Life Ins. Co.*, No. 99-70348, 1999 U.S. Dist. LEXIS 6021, at *8 (E.D. Mich. Apr. 7, 1999), and other courts looking at the past due benefits at the time of removal. *See e.g. Odeh v. Sentry Ins.*, Civil Action No. 14-cv-11901, 2014 U.S. Dist. LEXIS 155224, at *9-13 (E.D. Mich. Oct. 31, 2014).

In *Heyman*, the Sixth Circuit was met with this question in a lawsuit to recover unpaid disability benefits. *Heyman v. Lincoln Nat'l Life Ins. Co.*, 781 F. App'x 463, 471 (6th Cir. 2019). Plaintiff Heyman sued Lincoln National Life Insurance Company ("Lincoln National") in state court, alleging breach of contract when Lincoln National began withholding his disability benefit payments upon discovery that he was also receiving monthly Social Security Disability Insurance payments. *Heyman* at 466. Lincoln National removed the case to federal court and Heyman filed a motion to remand, stipulating that he would not seek over $75,000 in damages. *Id* at 467. In its discussion of compensatory damages, the Court stated "Were Heyman to be successful in the claims set forth in his complaint, the court would be required to determine the total disability payments Heyman should have received from September 2013—when Lincoln National began paying Heyman the reduced $122.29 monthly amount—through December 2015—when Heyman

filed his state court complaint." *Id*. at 471. Thus, the Sixth Circuit's calculation of the compensatory damages seems to suggest that, for the purpose of determining the amount in controversy, a court should look at the unpaid benefits which accumulated at the point the case was filed in state court.

The Sixth Circuit was again met with the question in *Graves v. Standard Ins. Co.*, No. 18-5449, 2019 U.S. App. LEXIS 27526, at *9-11 (6th Cir. Sep. 11, 2019). In *Graves*, Plaintiff Linda Graves sued her insurance company after it determined that she no longer qualified for disability benefits under her policy. *Graves*, 2019 U.S. App. LEXIS 27526, at *3. In a set of interrogatory responses, Graves stated that she believed the value of her long-term disability benefits to be at least $71,925, with total damages adding up to $883,000. *Id*. at *4. Relying on her interrogatory responses, Defendant Standard Insurance Company removed the case to federal court. *Id*. Graves filed a motion to remand on the grounds that the amount in controversy did not exceed $75,000. *Id*. at *5. In remanding the case back to state court, the Sixth Circuit stated, "[a]lthough Graves claimed that the value of her disability benefits was $71,925, her past due benefits totaled only about $6800 at the time she filed her complaint. Since the validity of the insurance policy itself was not at issue, the amount of Graves' future disability benefits cannot be included in determining the amount in controversy." *Id*. at *9 (citing *Harmon*, 88 F.3d at 416-17).

Together, *Harmon*, *Heyman*, and *Graves* suggest that, for the purpose of determining the amount in controversy in removed actions where the validity of the policy is not at issue, the Court should look to the amount of unpaid benefits accrued at the time the case was filed in state court. "The prevailing view, reflected in numerous cases . . . is that only the amount of the installments unpaid at the commencement of the suit may be taken into account, even though the judgment will be determinative of the company's liability for future installments." Charles Alan Wright, Arthur

5

R. Miller & Edward G. Cooper, *Federal Practice and Procedure: Jurisdiction* (4th ed. § 3710 2011). The rationale for this rule is further explained as follows:

> The matter in controversy involves only the liability of the insurance company to make the payments already accrued. No controversy exists in this action as to any disability payments under the contract in the future. The insurance company may or may not decline to pay them, and facts occurring subsequent to the filing of this action may completely justify its refusal to make future monthly payments even though the result of this action obligates it to pay those already accrued; such subsequently occurring facts might lead the insurance company to make such payments in the future irrespective of the result of this action. This action is in no way res judicata as to its liability under the policy in the future. Although the effect of the judgment in this case may result in the insured collecting from the insurance company a total sum far in excess of the jurisdictional amount, yet it is well settled that when federal jurisdiction depends upon the amount in controversy, "it is determined by the amount involved in the particular case, and not by any contingent loss either one of the parties may sustain by the probative effect of the judgment, however certain it may be that such loss will occur." *New England Mortgage Security Co. v. Gay*, 145 U.S. 123, 130 (1892).

*Id.* quoting *Button v. Mut. Life Ins. Co.*, 48 F. Supp. 168, 171 (W.D. Ky. 1943).

Here, Plaintiff is clear that he is only challenging Berkshire's determination that he is no longer totally disabled under the insurance policy and is not challenging the validity of the policy. [R. 1-1; 7-1]. Thus, the proper calculation of compensatory damages for the purpose of determining the amount in controversy is $66,616.67, the amount of unpaid benefits which had accumulated when the case was filed in state court.

      i.     *Harmon* Applies in this Case

Defendant argues that this Court should not follow the rule articulated in *Harmon* which excepts from consideration in the amount in controversy unpaid benefit payments which accumulate post-filing, and instead should treat disability insurance benefits as lost wages damages available in employment cases. [R. 10 at p. 8]. For the following reasons, Defendant's argument is unconvincing.

Defendant first argues that the *Harmon* rule is *dictum* and thus should not be applied in this case. [R. 10 at p. 7]. It is true that in *Harmon*, the Court was dealing with a complaint which did challenge the validity of the insurance policy at issue in the case, and thus the consideration of future benefits was appropriate. *Harmon*, 88 F.3d at 416-17. In other words, the rule regarding cases where the validity of the policy is not at issue did not directly apply to the situation in *Harmon*. However, the Sixth Circuit has continued to follow the rule it articulated in *Harmon* in both cases where the validity of the policy is and is not at issue. *See Graves*, 2019 U.S. App. LEXIS 27526, at *9 ("Since the validity of the insurance policy itself was not at issue, the amount of [Plaintiff's] future disability benefits cannot be included in determining the amount in controversy."); *Heyman* 781 F. App'x at 474 (repeating *Harmon* rule that future potential benefits may not be taken into account in the calculation of the amount in controversy where the validity of the policy is not called into question). Thus, Defendant's argument that the rule is *dictum* is unconvincing.

Similarly, Defendant also argues that this Court should not follow *Harmon* because, "there is substantial question whether the Court of Appeals, if it actually considered the legitimacy of a rule excluding all potential future disability benefits from the amount in controversy calculation, would follow it now." [R. 10 at p. 7]. As stated above, the Court of Appeals has continued to follow the rule it articulated in *Harmon*, and thus, *Harmon* remains good law in this Circuit and this Court recommends that it be followed in this case.

Further, Defendant's proposed alternative to following *Harmon*, which would be to treat disability insurance benefits as lost wages damages available in employment lawsuits and allow them to accumulate as the case progresses into trial, is contrary to Kentucky law. "[T]he law of Kentucky is dead set against the proposition that disability insurance benefits may be characterized

7

as being wages rather than merely fringe benefits." *Graves v. Standard Ins. Co.*, No. 3:14-CV-558-DJH, 2015 U.S. Dist. LEXIS 66894, at *19-20 (W.D. Ky. May 21, 2015) (citing *Francis v. Marshall*, 684 F.Supp.2d 897, 911 (E.D.Ky. 2010)); *see Caldwell County Fiscal Court v. Paris*, 945 S.W.2d 952, 954-55 (Ky. App. 1997).

In sum, under Sixth Circuit precedent dealing with cases where disability benefit payments constitute the available compensatory damages under an insurance contract, the amount in controversy is determined by looking at the amount of unpaid benefits accrued at the time the suit was filed in state court. Further, *Harmon* continues to be good law in this Circuit, and its holding applies to the instant case.

### b. Future Benefits Available Under an Injunction

Defendant next argues that Plaintiff's use of the word "enjoined" in one of the paragraphs of the complaint means that Plaintiff is seeking future benefits not yet in default at the time the suit was filed, and thus, some amount of these future benefits should be included when calculating the amount in controversy. [R. 10 at p. 9-10]. In Ison's complaint, he states that "Berkshire should be enjoined from stopping payments under the contract." [R. 1-1 at p. 6].

Typically, in injunction actions, the amount in controversy is the value of the right to be protected. *Goldsmith v. Sutherland*, 426 F.2d 1395, 1398 (6th Cir. 1970). However, in order to recover future potential benefits under the theory of an injunction, Plaintiff still must challenge the validity of the policy. *See Heyman*, 781 F. App'x at 474 (citing *Harmon*, 88 F.3d at 416-17). Since Plaintiff has not challenged the validity of the policy, any future potential benefits available under an injunction may not be considered in the amount in controversy.

### c. The Amount in Controversy Does Not Exceed $75,000

8

As determined above, the amount in controversy is the amount of benefits in default at the time the case was filed, not including any future potential benefits, plus any additional damages available under the contract. Defendant argues that the Court should also consider premiums paid by Ison in 2020, prior to the filing of Ison's lawsuit, as a result of Berkshire's determination that Ison was no longer totally disabled. According to an affidavit from Michelle Hank, an employee of Berkshire's parent corporation The Guardian Life Insurance Company of America, Ison was covered under three life insurance policies issued by The Guardian Life Insurance Company of America. [R. 10-8]. The three life insurance policies each contained a Waiver of Premium rider which waived Ison's premiums for these policies upon the determination that he was totally disabled under his disability insurance policy. [*Id.*]. When Berkshire determined that Ison was no longer totally disabled under the terms of his policy, his life insurance premiums ceased to be waived. [*Id.*]. Ison paid these three premiums on April 27, 2020, April 20, 2020, and April 23, 2020, totaling an amount of $4,744. [*Id.*].

Plaintiff argues that these premiums should not be included because they are a "post-removal stipulation" made by Defendant in an attempt to increase the amount in controversy. [R. 12 at p. 9]. However, Ison was required to pay the premiums as a direct result of Berkshire's alleged breach of contract which occurred when Berkshire determined Ison was no longer totally disabled and ceased making payments under the policy. "Under Kentucky law, the measure of damages for breach of contract is that sum which will put the injured party into the same position he would have been in had the contract been performed." *River City Fop Lodge 614 v. Ky. Ret. Sys.*, No. 3:17-cv-102 (WOB), 2020 U.S. Dist. LEXIS 27144, at *4 (E.D. Ky. Feb. 18, 2020) (citing *Hogan v. Long*, 922 S.W.2d 368, 371 (Ky. 1995)). If Berkshire would have continued paying benefits under the policy and would not have determined Ison to no longer be disabled,

9

Ison's premiums would have remained waived and he would not have paid $4,744 to keep his policies active. Further, in Plaintiff's demand for relief, he asks for "[a]ny and all other relief to which Plaintiff appears entitled." This would presumably include the reimbursement of the premium payments. Thus, this Court finds that the premiums are properly included in the amount in controversy. However, even with the premiums included, the amount in controversy only equals $71,360.67, which is the sum of the premiums and the benefits in default at the time the lawsuit was filed. This amount is under $75,000, and thus, remand is proper. *See Freeland v. Liberty Mutual Fire Insurance Company*, 632 F.3d 250, 252-53 (6th Cir. 2011).

## II. RECOMMENDATION

In sum, complete diversity exists between the parties, however, the amount in controversy does not exceed $75,000. Thus, IT IS RECOMMENDED that Plaintiff's motion to remand [R. 7] be GRANTED.

*** *** *** ***

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed with the Clerk of the Court within fourteen days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). A general objection that does not "specify the issues of contention" is not enough to satisfy the requirement of written and specific objections. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are not enough to preserve the right of appeal. *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991). A party may respond to another party's

objections within fourteen days of being served with a copy of those objections. Fed. R. Civ. P. 72(b)(2).

Signed April 16, 2021.

Signed By:
*Edward B. Atkins* *EBA*
United States Magistrate Judge